# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:18-cr-281-1 |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| SHAWN FORD, | ) | |
| | ) | |
| DEFENDANT. | ) | |

On November 19, 2019, defendant Shawn Ford ("Ford") was sentenced to an aggregate custody term of 403 months, following a jury trial in which he and a co-defendant, Charles Rogers, were convicted of one count of conspiracy to commit interference with commerce by robbery (Hobbs Act Conspiracy), in violation of 18 U.S.C. § 1951(a) (Count 1); and four counts of interference with commerce by robbery (Substantive Hobbs Act), in violation of 18 U.S.C. § 1951(a) (Counts 2, 5, 8, and 9). (Doc. No. 110 (Ford Judgment); *see* Minutes of Proceedings [non-document], 11/19/2019; *see also* Doc. No. 9 (Indictment).) Ford was also separately convicted of three counts of using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts 3, 6, and 10). (Doc. No. 110.)

The charges stem from a "series of four robberies that took place within a week at MetroPCS stores in Cleveland, Ohio." *United States v. Rogers*, 861 F. App'x 8, 11 (6th Cir. 2021). The Sixth Circuit succinctly summarized the 2018 crime spree that led to the arrest and convictions of Ford and Rogers as follows:

> Each robbery had the same pattern: two men with masks, guns, and blue latex gloves would enter the store, demand money, and then drive away. However, the fourth and final robbery did not go as planned. An off-duty police officer happened to be inside the store at the time and chased the robbers after they ran out of the store. Instead of stopping, the robbers shot at the police officer, who fired back and hit their vehicle.

*Id*.

Now before the Court is Ford's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Guidelines. (Doc. No. 164 (Motion).) Plaintiff United States of America (the "government") opposes the motion (Doc. No. 165 (Response)), and Ford has filed a reply. (Doc. No. 166 (Reply).)

The Court employs a two-step approach to deciding whether to reduce a sentence based on a retroactive amendment to the federal sentencing guidelines. First, the Court must consider the scope of the reduction authorized by the amendment, and then it must consider whether such a reduction is warranted based on the factors set forth in 18 U.S.C. § 3353(a). *Dillon v. United States*, 560 U.S. 817, 826, 130 S. Ct. 2683, 177 L. Ed. 2d 271 (2010) (citing § 3582(c)(2)).

Ford moves for a reduction in the term of imprisonment imposed based on a guideline sentencing range that has subsequently been lowered and made retroactive by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(o). Specifically, he argues that he is eligible for a reduced sentence under Amendment 821, Part A, which affected the sentencing guidelines' treatment of offenses committed while under a criminal justice sentence. (*See* Doc. No. 164, at 1, 3.[1]) Part A of Amendment 821, which now appears in the guidelines at § 4A1.1(e), limits the criminal history impact of "status points," decreasing them by 1 point for individuals with 7 or

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

2

more criminal history points and eliminating status points for those with 6 or fewer criminal history points. *See* U.S.S.G. § 4A1.1(e). The Amendment was given retroactive effect, provided that any order reducing a term of imprisonment based on retroactive application of Amendment 821 have an effective date of February 1, 2024, or later. *See* § 1B1.10(e)(2) (Nov. 1, 2023).

At the time of sentencing, the Court calculated Ford's base offense level for Counts 1, 2, 5, 8, and 9 (§ 1951(a) offenses) to be 20. (*See* Doc. No. 140 (Ford Sentencing Hearing), at 13; *see also* Doc. No. 108 (Revised Final PSR), at 11 ¶ 47.) After the appropriate adjustments were applied—a 2-level increase pursuant to § 3C1.1 for obstruction; and a 4-level increase pursuant to § 3D1.4 for the existence of multiple counts—the resulting total offense level was 26. (*See* Doc. No. 140, at 13; *see also* Doc. No. 108, at 11, 13–14 ¶¶ 50, 79, 83.) Ford had prior convictions for aggravated rioting, aggravated menacing, aggravated robbery with a 1-year firearm specification, and having weapons while under a disability, which collectively scored five criminal history points. (*See* Doc. No. 140, at 13; *see also* Doc. No. 108, at 15–17 ¶¶ 88–91.) Two more points were added because Ford was under a criminal justice sentence at the time of the instant offenses. (*See* Doc. No. 140, at 13; *see also* Doc. No. 108, at 17 ¶ 92.) With a total of seven criminal history points, Ford was a criminal history category IV. (*See* Doc. No. 140, at 13; *see also* Doc. No. 108, at 17 ¶ 93.) The advisory guideline range at offense level 26, criminal history category IV, was 92 to 115 months for Counts 1, 2, 5, 8, and 9. (*See* Doc. No. 140, at 13–14; *see also* Doc. No. 108, at 20 ¶ 115.) For Counts 3 and 6, the mandatory minimum sentence was 84 months for each count to be served consecutive to each other and consecutive to any other sentence. (*Id.*) For Count 10, the mandatory minimum sentence was 120 months, to be served consecutive to Counts 3 and 6 and consecutive to any other sentence. (*Id.*) The Court imposed a within-guideline aggregate custody

3

sentence of 403 months.[2] (*See* Doc. No. 110; Doc. No. 140, at 34.)[3]

In his motion, Ford requests that the Court reduce his sentence on Counts 1, 2, 5, 8, and 9 to 97 months, based on the amended guideline range applicable for these counts following the changes made to "status points" under Part A of Amendment 821. (Doc. No. 164, at 1.) Under the Amendment, because Ford had 6 or fewer criminal history points, his "status points" would be eliminated, resulting in a total criminal history score of 5, which correlates to a criminal history category III. With a total offense level of 26 and a criminal history category of III, his amended sentencing guideline range is 78 to 97 months. He requests a new sentence on these counts at the upper-end of this range; namely 97 months. (*Id.* at 3.) The statutory mandatory minimum sentence for Counts 3 and 6 (84 months) and the statutory mandatory minimum sentence for Count 10 (120 months) would remain the same. (*Id.*) Ultimately, the change would reduce Ford's total sentence from 403 months to 385 months. (*Id.*)

The government concedes that Ford is eligible for a sentence reduction under Part A. It, nevertheless, urges the Court to exercise its discretion in denying Ford's motion "based on a concern for public safety because of [Ford's] extensive and violent criminal history and the nature and circumstances of the instant offenses." (Doc. No. 165, at 3.)

The Court agrees with the parties that Ford is eligible for consideration of a sentence reduction under Part A. *See* U.S.S.G. § 1B1.10. Having concluded the amended guidelines range

---

[2] Specifically, Ford received 115 months for Counts 1, 2, 5, 8, and 9, to be served concurrently; 84 months for Counts 3 and 6, to be served consecutively to each other, and to the other counts; and 120 months for Count 10, to be served consecutively to all counts for a total of 403 months of custody. (Doc. No. 110; *see* Doc. No. 140, at 34.)

[3] In imposing sentence, the Court observed: "I do want to make one other point. In nowhere have I heard from [Ford] any remorse towards any of the victims in this case and any remorse for any of his actions, which in itself is disturbing again. There's no regard for those who were really victimized and put in fear by his actions." (Doc. No. 140, at 34; *see* Doc. No. 112 (Statement of Reasons), at 2.)

would have been applicable to Ford had the Amendment been in effect at the time of sentencing, the Court proceeds to the second step of the analysis and considers whether such a reduction is warranted based on the factors set forth in § 3553(a). *Dillon*, 560 U.S. at 826 (citing § 3582(c)(2)).

Subject to the limits set forth in U.S.S.G. § 1B1.10(b), a court may consider all pertinent information in applying the § 3553(a) factors and determining whether and by how much to reduce a defendant's sentence. *Dillon*, 560 U.S. at 821–22; *see United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing 18 U.S.C. § 3553(a) and directing district courts to consider all relevant statutory sentencing factors). Section 3553(a), in addition to requiring consideration of the applicable guidelines and policy statements of the Sentencing Commission, requires the sentencing judge to consider the nature and circumstances of the offense and the history and characteristics of the defendant; and the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from future crimes of the defendant; (4) to provide the defendant with needed educational or vocation training, medical care, or other correctional treatment in the most effective manner; and (5) the kinds of sentences available. *See* 18 U.S.C. § 3553(a).

Application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment[.]" U.S.S.G. § 1B1.10 app. n. 1(B)(ii). Application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment[.]" *Id*. app. n. 1(B)(iii).

The instant armed robberies were serious and dangerous and continue to warrant a

5

significant sentence. For example, in the first robbery (occurring on March 21, 2018), Ford and his co-defendant, Rogers, entered a MetroPCS store with guns, ordered the employee to open the drawers and took wallets, cash, and identification documents from two store customers who they ordered to the floor. (Doc. No. 134 (Trial Transcript), at 47–64, 70–76.) One of the defendants threatened to beat or shoot a handicapped male customer as he roughly went through the customer's pockets. (Doc. No. 108, at 6 ¶ 16.) Four days later (on March 25, 2018), Ford and Rogers robbed another MetroPCS store with guns and forced two employees and four customers to the ground, before one defendant went through the cash register while the other one forcibly went through the customers' pockets. (*Id*. at 6 ¶ 19.)

Two days later (on March 27, 2018), within hours of a failed robbery of yet another MetroPCS store, Ford and Rogers robbed at gunpoint the customers and employees of a fourth MetroPCS store. One of the customers happened to be an off-duty police officer, who gave chase as Ford and Rogers fled the store. After identifying himself as a police officer, one of the gunmen began shooting at the officer. The officer returned fire and hit the defendants' vehicle before they sped away. They were apprehended within hours of this last robbery. (Doc. No. 108, at 7–8 ¶¶ 23–28.) Without question, Ford's actions during these robberies were the acts of a dangerous individual. The fact that he committed these dangerous acts (all of which involved the carrying, using, and brandishing of a weapon) while on probation with another court suggests that he is unwilling to refrain from possessing weapons and committing violent crimes and thus presents a serious danger to the community. (*See id*. at 17 ¶ 92.)

And unfortunately, these dangerous acts were consistent with a violent criminal history that began when Ford was only 15 years old and included juvenile adjudications for aggravated

6

rioting, aggravated menacing, and aggravated robbery with a firearm specification, and an adult conviction for aggravated robbery with a firearm specification and having weapons while under a disability. (*See* Doc. No. 140, at 16; Doc. No. 108, at 15–17 ¶¶ 88–90, 96.)

To better illustrate Ford's violent criminal history, in 2014, when Ford was only 16 years old, he committed an armed robbery wherein he approached a woman standing at a bus stop with a gun. He pointed his gun at the woman and said, "give me your phone or I'll kill you." The woman complied and gave Ford her phone. (Doc. No. 108, at 16 ¶ 90.) After serving a prison term, Ford was on supervision for this prior robbery when he committed the armed robberies in the present case. (*Id*. at 17 ¶ 92.)

The nature and extent of Ford's criminal history counsels strongly against granting the requested relief.

Ford argues that his "accomplishments since his sentencing four and a half years ago, demonstrate that he has grown, [and show that he] realizes he must educate himself and find other productive ways to rehabilitate himself while serving his sentence." (Doc. No. 164, at 4.) He documents the programming he has completed while incarcerated on the present offenses. (Doc. No. 164-1 (Inmate Education Data Transcript).) He also underscores that he obtained his GED on September 30, 2020. (Doc. No. 164, at 4 (citing Doc. No. 164-1).)

While the Court commends Ford for obtaining his GED and for the programming he has completed while incarcerated, it must also consider his post-judgment disciplinary record. According to institutional records supplied by the government, Ford has been sanctioned on multiple occasions for possessing unauthorized items (including drugs and alcohol), destroying property, possessing a non-hazardous tool, and refusing to obey an order. (Doc. No. 165-1 (Inmate

Discipline Data).) These infractions, the most recent occurring in February 2024, suggest that defendant remains unable or unwilling to conform his behavior in accordance with societal laws.

After taking into consideration all of the § 3553(a) sentencing factors, the Court finds that it is in agreement with the government that Ford remains dangerous and does not merit a sentence reduction. Additionally, for the same reasons, the Court finds a reduction of his sentence would undermine the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, provide just punishment for the offenses, and afford adequate deterrence.

For the foregoing reasons, defendant's motion to reduce his sentence (Doc. No. 164) is DENIED.

**IT IS SO ORDERED**.

Dated: June 14, 2024

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**